### No. 20,461.

LEVI B. BULLINGTON, *Appellee*, v. ADELIA M. PATTERSON and J. O. PATTERSON, *Appellants*.

#### SYLLABUS BY THE COURT.

PURCHASE-MONEY MORTGAGE—*Foreclosure—Counterclaim for Damages—Misrepresentation as to Boundary Line—Surveys—Findings.* In a suit to foreclose a purchase-money mortgage, defendants set up a counterclaim for damages by reason of alleged misrepresentations by plaintiff as to the true boundary lines of the real estate. The evidence, findings and conclusions of law are examined, and it is *held:* (a) The findings are sustained by sufficient evidence. (b) There was no error in the holding of the trial court that certain surveys made by surveyors, and other evidence offered for the purpose of showing the exact location of the boundary lines. of the property were unsatisfactory. (c) On the findings, a judgment against defendants will not be disturbed.

Appeal from Cowley district court; ALBERT L. NOBLE, judge *pro tem.* Opinion filed December 9, 1916. Affirmed.

*J. E. Torrance, O. W. Torrance,* both of Winfield, and *W. H. England,* of Ponca City, Okla., for the appellants.

*S. A. Smith,* of Winfield, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In a suit to foreclose a mortgage there was judgment for the plaintiff, from which the defendants appeal.

The real estate consists of a hotel property in the city of Dexter, and formerly belonged to the plaintiff. On the 16th of August, 1912, he sold and conveyed it by warranty deed to the defendants, and the mortgage was given to secure a balance of $400 on the purchase price. The defendants filed a cross-petition and asked for $1500 damages alleged to have been sustained by reason of misrepresentations by the plaintiff in reference to the true boundary lines of the property,

and claimed he represented that the hotel building was entirely on the lot in question; that they knew nothing about the boundary lines and relied wholly upon his representations; that in fact the entire west side of the building stood six feet and four inches over on an adjoining lot on the west, owned by another party; that a portion of the east side and southeast corner of it was cut off by the right of way of the Missouri Pacific railway, and the north side or end of the hotel was out in the public street. The court made the following findings of fact:

"First: The court finds that on and prior to the 16th day of August, 1912, the plaintiff was the owner of Lot Eleven (11) in Block Two (2), in Enright's addition to the City of Dexter, Cowley county, Kansas, and on said date sold and conveyed said property to the defendant, Adelia M. Patterson, by deed of general warranty, and that on the same day and as a part of the purchase price of the premises, the defendants executed and delivered the notes and mortgage sued on in this action, and that there remains due and unpaid on said notes the sum of $400.00, with interest thereon from August 16th, 1912, at the rate of 8 per cent per annum.

"Second: That said Lot Eleven (11) was and is of the dimensions of fifty by one hundred fifty feet, and fronts what is known as Valley Street in the city of Dexter for the frontage of fifty feet, and that said lot was and still is occupied by a frame hotel building of which the main part is two stories high. There was and is a one-story leanto addition on the west of the main building, which addition was used as the kitchen of the hotel. The hotel building then did and still does stand practically flush on the north end of the lot with the street line as the same was then and is now used and marked by side walks, fences and other improvements on this and adjoining property, and that then and now a cement side walk extended east and west along the north line of this lot and immediately along the north side of the hotel building, and that about one foot or less west of the north-west corner of the leanto addition such cement walk was joined by an older brick walk extending along the north side of the adjoining Lot Twelve (12) in the same line with the cement walk and extending towards the center of town, and that at that time there was a partial row of trees and, perhaps, some fencing marking the apparent lot line between Lots 11 and 12 corresponding practically with the said junction of the two side walks, and running on a north and south line some inches or not to exceed one foot west of the leanto addition to the hotel.

"Third: That the defendants are wife and husband, and at the time of their purchase of the property, they were neither of them familiar with the boundaries or lines of said Lot 11, except as the same were indicated by the objects aforesaid, and in showing the property to the defendant, J. O. Patterson, who was acting for his wife, the plaintiff in-

formed him that the west line was at the said line of trees, and the defendants believed such statement and relied thereon in purchasing the property.

"Fourth: Enright's Addition to the city of Dexter was laid out and platted more than 25 years ago, and there are none of the original stakes and monuments left indicating any of the corners or lines of the addition, or blocks, lots, streets, or alleys, therein, which can now be found. The evidence which was introduced tending to show the exact location of the boundary lines of Lot 11, as originally platted, is unsatisfactory to the court for the reason that the survey of the witness Merry was not sufficiently thorough to carry conviction of its accuracy, and the survey of the witness Bradley depends entirely upon the accuracy of the true point of inter-section of a quarter-section line with the easterly line of an earlier addition, which runs in a slanting northeasterly direction and not at right-angles with the quarter-section line. The easterly line of the earlier addition seems fairly well established, but the location of the quarter-section line is based entirely upon more or less ancient lines of fences and hedges and not on any established corners, unless it be one stone to the east, and the location of the intersection was determined by sighting from this stone by an intermediate fence or hedge line only and as the accuracy of the Bradley survey is therefore dependent on corners located merely by old improvements, it fails to be any more convincing as to the true location of the east line of Lot 11 than the old boundary marks erected by the owners at a time when there is reason to believe the original marks may have been in existence. The facts that the evidence shows that measurements on the recorded plat of the Enright Addition were impossible and necessarily incorrect, adds to the dissatisfaction of the court with the defendants' evidence of the true location of the lot nine.

"Fifth: The plaintiff had owned Lot 11 for more than 25 years during all of which time he honestly believed that the line which he pointed out to the defendants as the west line of Lot 11 was correct. This line had been recognized by both parties, the plaintiff and the then owner of said Lot 12, as the true boundary line, and the owner of Lot 12, whose heirs still own the property, adopted the boundary line more than 25 years ago by erecting a fence thereon, and the brick side walk up to the line, and plaintiff set out trees on said line with the knowledge and acquiescence of the owner of Lot 12, and the boundary thus located by the owners was ever since acquiesed in and recognized as the true boundary up to August 16th, 1912, except that one of the heirs of the original owner of Lot 12 some 8 or 10 years ago expressed to the plaintiff his doubt of the correct location, and it was then agreed that a surveyor should be called, but that was never done. One or two persons who did not pretend to the plaintiff to have any actual knowledge on the subject, had expressed their opinion to the plaintiff that his building was too far west and extended over on Lot 12, but to these parties the plaintiff always contended that he knew the location of the line and that it was at the

place where he pointed it out to the defendants, and at the time the plaintiff sold the property to the defendants and pointed out to them the west line of the lot he was acting in good faith upon the honest belief that he knew the location of the boundary line, and at that time he had no valid reason to suspect he was mistaken in that regard.

"Sixth: Defendants have never been disturbed in their possession of any of the land which was pointed out to them and which they have occupied, as Lot 11, and no demand for possession has ever been made of them nor any legal proceedings brought against them."

As conclusions of law, the court held from these facts that the plaintiff was not liable to defendants upon the cross-petition and gave plaintiff judgment for the foreclosure of the mortgage.

The first claim is that the court erred in finding that the separate surveys made by surveyors Merry and Bradley were inaccurate and unreliable. The surveyors were witnesses and were closely questioned by the court in explanation of their surveys. It would have been impossible for the court to have found that both surveys were accurate and reliable, because they did not agree. One showed that the hotel building was over on lot twelve about six and one-half feet, and that the corner of lot eleven was on the Missouri Pacific right of way. The other surveyor testified and his survey showed that the building was over on lot twelve three feet seven inches and that the north end projected into the street seven feet five inches; and this witness said nothing at all about the Missouri Pacific right of way. Witness Merry, when asked where he began running the line with the compass and chain, said that he used a chain but no compass; that he started at the "stock pen" and not where the survey started when Enright's addition was laid out. This same witness was asked how near the hotel building came to the north line of lot eleven, and answered that it came out flush with the property line.

Surveyor Bradley testified that Enright's addition is not "based on any government corner or line," and that the streets of the old town of Dexter run north thirty-three degrees east of north, and that the opposite streets run at right angles with that; that the country around there was surveyed on a variation which ran from eleven and one-half to twelve degrees east of north, and that he had no means of knowing whether the surveyor who laid out the original town site, or Enright's ad-

dition, followed the government's variation. A careful examination of the testimony of these witnesses convinces us that the court was justified in rejecting both surveys. Besides, several other surveys were in evidence.

Meade, the owner of lot twelve lying west of the lot in controversy, built a fence between the two lots, and this line was recognized for a period of twenty-five years or more by the owners of the two lots as the line of their property. Plaintiff testified that sixteen or seventeen years before the time of the trial he had set out some trees along the fence, that all of these died except one, but that he subsequently set out another row along the fence. After Meade's death his widow built a brick sidewalk along the north line of lot twelve, beginning at the end of the fence. Bullington erected his hotel, the west side of the building being about eighteen inches east of the fence. He afterwards built a cement sidewalk connecting up with Meade's brick sidewalk. The Missouri Pacific Railway Company built the north end of their depot platform flush with the street and in line with the brick and cement sidewalks above mentioned, and other property owners on the same side of the street improved their property substantially along the same line. Surveyor Bradley testified that the sidewalks run practically in line with the north side of the hotel and fairly true up to the depot platform. It has been said:

"A boundary line long recognized and acquiesced in, is generally better evidence of where the real line should be than any survey made after the original monuments have disappeared." (*Tarpenning v. Cannon*, 28 Kan. 665, syl. ¶ 3.)

The defendants argue that no title could have been obtained by adverse possession as against the owner of lot twelve, because plaintiff believed that the lines were where he represented to the defendants, and, therefore, it is clear that he never intended to claim any part of lot twelve. Cases are cited which recognize the doctrine that the character of the possession depends upon the intent with which it is taken and held. It is true, the court finds that the plaintiff believed the line he pointed out to the defendants as the west line of lot eleven was correct, but this is merely a finding that the plaintiff acted in good faith. The owners of lot twelve are not parties to this litigation, and we do not understand the court to have decided that plaintiff, when he sold the property to the

defendants, had acquired a title to part of lot twelve by prescription. For this reason many of the propositions of law urged by the defendants need not be considered, because they have no application here.

It is sufficient answer to defendants' contention that plaintiff could obtain no title to a portion of a public street by adverse possession, to say that there is no finding of the court that any part of the building was in the street. The finding is that the building "stands flush with the street." From all that appears in the evidence, there is no probability that the public will ever interfere with the defendants' right to maintain the building where it is, so far as the street is concerned. The burden was on the defendants to establish not only that the representations were relied upon, but that they were false. The evidence failed to satisfy the court that the defendants were entitled to the relief prayed for. There was certainly much conflict in the evidence, and we feel bound by the decision of the trial court on the facts, and are convinced that the judgment should be, and it is, affirmed.